# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| **CROSSROADS TRUCKING CORP.,**<br><br>Plaintiff,<br><br>v.<br><br>**TRUNORTH WARRANTY PLANS OF NORTH AMERICA, LLC and 19th CAPITAL GROUP, LLC,**<br><br>Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, Crossroads Trucking Corp. ("Crossroads"), complaining of Defendants TruNorth Warranty Plans of North America, LLC ("TruNorth") and 19th Capital Group, LLC ("19th Capital"), alleges as follows:

1. Crossroads is a corporation organized and existing under the laws of New York with its principal place of business at 2 Olympia Lane, Stony Brook, New York 11790. Its sole purpose is to transport equipment for Dreamland Amusements, a family company, based in Delco, North Carolina, that hosts community fairs and carnivals up and down the East Coast, including within the Western District of North Carolina. To accomplish this, Crossroads relies on a handful of tractor-trailer trucks it leases to move carnival equipment short distances from time to time.

2. TruNorth is a limited liability company organized and existing under the laws of North Carolina with its principal office and place of business at 16740 Birkdale Commons Parkway, Suite 208, Huntersville, North Carolina 28031, within

the Western District of North Carolina. According to its website, its "commitment to keeping our customers on the road drives everything we do," and it operates according to "honesty" and "integrity." Unfortunately, as Crossroads learned too late, these are not true statements.

3. 19th Capital is a limited liability company organized and existing under the laws of Delaware with its principal office address and registered agent located at 9702 E. 30th Street, Indianapolis, Indiana 46229. Throughout the relevant time period, 19th Capital worked closely with TruNorth, in Huntersville, North Carolina, to conspire to lease defective tractor-trailer trucks to Crossroads and others on the false pretense that the vehicles were covered by a robust, comprehensive, and straightforward warranty that would cover any engine failure. Instead, Defendants fooled Crossroads into leasing defective trucks and denied warranty coverage, for bogus reasons, when the trucks quickly failed. Defendants developed this scheme in the Western District of North Carolina and have used it to dupe customers nationwide.

4. This Court has original jurisdiction over this civil action, pursuant to 28 U.S.C. § 1332(a)(2), because the amount in controversy exceeds $75,000, exclusive of interests and costs, and the matter is between citizens of different states.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in Mecklenburg County, North Carolina, which is within this judicial district. In particular, the catastrophic engine failure described below occurred in this district,

and efforts to repair the truck and obtain warranty coverage occurred here. Most importantly, this is where Defendants conspired to engage in their deceptive enterprise, because TruNorth is headquartered in Huntersville.

6. Defendants TruNorth and 19th Capital have an ongoing partnership, whereby they lease unwitting victims defective trucks under the false pretense that the trucks are fully covered by a robust warranty. But when customers attempt to enforce the warranty as attempted in Charlotte by Crossroads – Defendants engage in a series of tricks, dilatory tactics, and lies in an effort to avoid honoring their warranty obligations while still demanding that victims make lease payments on the defective trucks. Crossroads fell victim to this scheme in 2019 and 2020.

7. The relationship between the Parties began on or around June 30, 2019 when 19th Capital sent an email to Scott Goodnow at Crossroads. The email, and several other emails and calls over time, solicited Crossroads to lease trucks from 19th Capital.

8. In the emails and subsequent marketing communications, 19th Capital's principal "pitch" to Crossroads was that any leased trucks would be covered by a robust warranty that would promptly cover any repairs if a leased truck failed, so that the truck could get back on the road quickly, with minimal expense, delay, and inconvenience to Crossroads. Defendants were selling Crossroads a complete truck and lease package that offered peace of mind that any truck engine failures would be promptly and fully addressed under a warranty acquired by 19th Capital, the lessor.

9. As noted, in addition to representations in emails that the trucks would come with a warranty that would cover any and all issues with the engine, Defendants made a number of similar oral representations to Scott Goodnow, the Crossroads employee who represented Crossroads in discussions with Defendants.

10. For example, a 19th Capital employee represented to Mr. Goodnow that 19th Capital had a great warranty program that would completely cover anything that went wrong with the trucks quickly and with no hassle.

11. On or around July 15, 2019, in an in-person conversation with the 19th Capital employee, Mr. Goodnow asked him directly about the warranty, stating "if this truck blows up on the way home, it is covered right?" to which the 19th Capital employee responded, "oh yeah, no problem."

12. In fact, in every conversation that Mr. Goodnow had with the 19th Capital employee, when asked about the coverage of the warranty, the 19th Capital employee consistently maintained that the warranty would cover any and all problems with the trucks.

13. In reliance on Defendants' representations about the robust and quality warranty, Crossroads agreed to first lease a freightliner truck (the "First Freightliner") from 19th Capital on or around July 15, 2019.

14. The associated warranty (the "First Warranty") was provided by TruNorth, a close business partner and conspirator of 19th Capital.

15. So close was the relationship between 19th Capital and TruNorth that the warranty agreements ultimately executed for Crossroads' benefit featured – at

the head of the first page – the names and logos of both TruNorth and "Quality: A Division of 19th Capital."

16. Interestingly, in the First Warranty executed for Crossroads' benefit, 19th Capital was listed as the "customer" and TruNorth provided the warranty. The so-called "19th Capital All-Inclusive Component Breakdown Warranty Agreement" was not an arm's length transaction.

17. Although 19th Capital used the First Warranty as the most material inducement for the July 15, 2019 lease, 19th Capital did not execute the warranty with TruNorth until August 13, 2019, about a month after the lease was signed.

18. Although 19th Capital told Crossroads that Crossroads was the First Warranty's beneficiary, Crossroads never saw the warranty or was told of its specific terms. It reasonably relied on 19th Capital, the party that promised to acquire and provide a robust warranty, to acquire and provide a robust warranty as promised.

19. As such, Defendants and Crossroads did not negotiate the First Warranty. Although Crossroads is a beneficiary, it is not a party to the First Warranty and did not receive the terms and conditions of the First Warranty until after purchasing the truck.

20. Crossroads did not execute the First Warranty.

21. Crossroads did not agree to the First Warranty's dispute resolution provision – or even know about it until after it signed the lease and the warranty was executed.

22. Defendants never told Crossroads, when the first lease (or any lease) was being discussed, that the warranty would contain any dispute resolution provision.

23. 19th Capital did not allow Crossroads to select any other warranty provider. Instead, 19th Capital selected its close partner and conspirator, TruNorth.

24. The First Warranty covered the Freightliner's engine, transmission, differentials, and other components for 36 months and 1,250,000 miles.

25. The First Freightliner suffered catastrophic engine failure after around only 20,000 miles of use.

26. Without event, Defendants replaced it with a substitute Freightliner (the "9789 Freightliner") on February 28, 2020, subject to a lease and warranty that were substantially the same. It is the 9789 Freightliner that is the principal subject of this Complaint.

27. The warranty agreement (the "Second Warranty") for the 9789 Freightliner, which was materially the same as the First Warranty, was different in interesting ways. For the first time, Crossroads, rather than 19th Capital, was listed as the "customer."

28. However, the Second Warranty's signature blank for "customer" was signed not by anyone from Crossroads, but by Nicole Preston, the Defendants' representative. She signed for 19th Capital as well.

29. As with the First Warranty, TruNorth did not share the document prior to the purchase of the lease and it was only shared with Crossroads a month after it

was executed. The Second Warranty (which again, was signed by Defendants' agent on both sides) was dated February 28, 2020. However, it was not shared with Crossroads until April 1, 2020, in an email entitled "Welcome to TruNorth Warranty – FSGF9789". This is the first time that Crossroads could ever have become aware that TruNorth warranties included Byzantine claims process conditions.

30. Upon information and belief, the reason why Defendants forged Crossroad's signature was to execute the document without anyone from Crossroads seeing it.

31. As with the lease and warranty for the first truck that failed, Crossroads leased the 9789 Freightliner solely because it expected and was promised a robust, reliable warranty. Instead, as Crossroads would learn too late, it received a warranty full of loopholes, hurdles, and hoops through which TruNorth could attempt to avoid coverage.

32. The 9789 Freightliner, like its predecessor, was a lemon. On June 30, 2020, just a few months and 7,873 miles after Crossroads received it, it too suffered catastrophic engine failure.

33. The failure occurred in Charlotte, North Carolina, within the Western District of North Carolina – ironically, not far from TruNorth's headquarters.

34. Immediately, Crossroads took the 9789 Freightliner to repair facilities, just as the warranty required, and made best efforts to comply with the many conditions set forth by TruNorth in its warranty. The repair facilities were located in Charlotte, North Carolina.

35. Estimated repair damages totaled $46,972.06. In total, as itemized below, total actual damages are currently nearly $130,000. The figure increases daily.

36. Crossroads filed its claim with TruNorth on June 30, 2020.

37. On August 11, 2020, TruNorth denied the claim, alleging, among other deceptive reasons for denying coverage, that the check engine lights had illuminated during the 100 hours before failure. TruNorth claimed this voided the warranty.

38. In response, Crossroads had the truck inspected by its own mechanic, who opined that there was no connection between the check engine light illumination and the failure and that the truck was not impaired before the engine failure. Crossroads sent TruNorth a letter dated November 22, 2020 saying so.

39. Nevertheless, TruNorth again denied the claim in a December 7, 2020 letter that catalogued, over the course of five single-spaced pages, a litany of pretextual reasons for denial, based on TruNorth's interpretation of its intentionally convoluted and obscure claims procedure.

40. Defendants never instructed Crossroads that the warranty would subject Crossroads to an elaborate "claim procedure" or "breakdown responsibilities" until April 1, 2020 – long after February 28, 2020, when the second warranty was purportedly executed and the 9789 Freightliner lease was executed.

41. Defendants never instructed Crossroads, until April 1, 2020 – a month after the lease and warranty were executed – that Crossroads would be subjected to strict "required maintenance" procedures, without which TruNorth would purport to deny coverage.

42. Some of the December 7, 2020 letter's reasons for denying the claim were not only hyper-technical, unreasonable, and based on a warranty agreement and other documents that Crossroads had not been permitted to review before execution, but were flat out misstatements. For instance, TruNorth blamed Crossroads for not having the truck initially reviewed by TruNorth-approved mechanics and for delays in the inspection process associated with enforcing the warranty.

43. However, these delays were occasioned (among other causes not attributable to Crossroads) by the fact that many mechanics will not work with TruNorth because of its reputation for being unreasonable and difficult, TruNorth would ask for information that had already been provided, and TruNorth would wait until the last minute to demand information from mechanics or provide instructions to them.

44. In addition to being denied approximately $50,000 in engine repair costs, Plaintiff has paid, to date, $30,352.78 in lease payments for a truck that does not run, $32,027.50 to lease substitute trucks, and $15,356.40 in mechanic costs, totaling $127,736.68. These damages increase by the day. This total does not include damages associated with the failure of the First Freightliner, which are also claimed in this action.

45. After TruNorth groundlessly denied the warranty request, Crossroads' own investigation revealed that both Defendants have a history of violating the law, leasing defective trucks, and then denying warranty coverage for bogus reasons while continuing to demand lease payments from the failed truck.

46. The Second Warranty agreement contains a "dispute resolution" provision that states, in part: "This Agreement shall be governed by and in accordance with the laws of the State of North Carolina, USA. The parties agree that any action, suit, or proceeding arising out of or related to this Agreement, not submitted to arbitration, shall be instituted only in the state or federal courts located in Mecklenburg County, North Carolina, USA. In the event of any dispute between parties concerning coverage under this Agreement, a written request to TrüNorth™ for Arbitration must be submitted."

47. The foregoing provision does not require that this case be arbitrated, because Crossroads did not agree to arbitrate or waive a jury trial, or the arbitration clause (and not the warranty agreement in general) was procured by fraud, not negotiated by Crossroads, and never agreed to by Crossroads. Specifically, as alleged throughout this Complaint, Defendants did not provide Crossroads with a copy of the Second Warranty until a month after the lease and the date that it was purportedly executed. Moreover, Crossroads never signed the warranty agreement. Rather, Defendants' representative named Nicole Preston undertook to sign for Crossroads (as well as for 19th Capital). Because Crossroads never saw the agreement containing the arbitration clause, never negotiated or even discussed it with Defendants, and was not even aware that there would be an arbitration clause, the Court should not enforce it. Crossroads, having never seen the provision, cannot knowingly and voluntarily have accepted it.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION – UNFAIR AND DECEPTIVE TRADE PRACTICES
(N.C. GEN. STAT. §75-1.1)

48. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

49. Defendants engaged in unfair or deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1.

50. These unfair or deceptive trade practices were in or affecting commerce.

51. These unfair and deceptive trade practices caused actual injury to Crossroads.

52. For example, 19th Capital leased substandard trucks to Crossroads, two of which suffered almost immediate catastrophic engine failure, causing Crossroads to incur money damages for lost time, repair costs, and replacement, among other damages.

53. 19th Capital induced Crossroads to lease these substandard trucks by promising that they would be fully protected by a robust warranty that would facilitate prompt, straightforward, and full repair or replacement if there were any problems with a leased truck.

54. Instead, 19th Capital colluded with TruNorth, a closely related company and business partner that was known to be the subject of many customer complaints and criticism in the industry, to provide a deficient warranty that was full of caveats, conditions, and loopholes, and designed to give TruNorth myriad pretextual reasons to deny coverage.

55. 19th Capital and TruNorth further deceived Crossroads by not showing Crossroads the warranty – or even executing the warranty – until about a month after the lease was executed.

56. Because of the foregoing, according to Defendants' plan, when the 9789 Freightliner suffered catastrophic engine failure shortly after delivery to Crossroads, TruNorth wrongfully refused to honor the Second Warranty. Instead, TruNorth made Crossroads jump through many needless hoops to stall coverage, ultimately citing irrelevant, invalid, and pretextual reasons based on loopholes and tricks in the warranty to deny coverage.

57. As a result, Crossroads continues to make lease payments to 19th Capital for a defective truck that does not work, which should promptly have been repaired or replaced if the warranty operated as promised by Defendants before and when the lease was signed.

58. Crossroads has been damaged by the foregoing in an amount exceeding $75,000 and is entitled to recover from Defendants compensatory and punitive damages in amounts to be determined at trial.

59. Crossroads is entitled to legal fees and treble damages, as contemplated in N.C. Gen. Stat. § 75-1.1.

## SECOND CAUSE OF ACTION – NEGLIGENCE

60. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

61. Having promised to acquire and provide a robust, comprehensive warranty that would quickly and efficiently enable trucks it leased to Crossroads to be repaired or replaced if they failed, Defendants owed Crossroads a duty to provide such a warranty and/or work in good faith to promptly remedy any engine failure, regardless of the written warranty agreements.

62. Defendants breached that duty by negotiating, at less than arm's length, a subpar warranty with each other that provided TruNorth many opportunities to pretextually and groundlessly deny coverage.

63. Because of Defendants' negligence and breach, Crossroads did not receive a warranty that allowed the 9789 Freightliner to be replaced or repaired when it failed. This has damaged Crossroads because it must still make lease payments to 19th Capital for a truck that does not work, and because Crossroads has incurred mechanic costs, expenses associated with replacing the truck, lost time, and other damages.

64. Crossroads' damages were reasonably foreseeable because by failing to provide the robust coverage that Defendants promised, Crossroads was unable to make use of the warranty coverage and was unable to replace or repair the 9789 Freightliner.

65. Crossroads has been damaged by the foregoing in an amount exceeding $75,000 and is entitled to recover from Defendants compensatory and punitive damages in amounts to be determined at trial.

## THIRD CAUSE OF ACTION – FRAUD
(Against 19th Capital)

66. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

67. Defendant made multiple misrepresentations regarding its warranty program and the condition of its trucks to wrongfully induce Crossroads into leasing its trucks, including but not limited to:

   a. Representing falsely that its trucks were in good working condition.

   b. Representing falsely to Crossroads that the trucks would come with a warranty that would cover any and all issues with the engine.

   c. Stating falsely to Scott Goodnow and others at Crossroads that the warranty would cover any and all problems with the trucks.

68. Defendant made these misrepresentations, through emails, calls, and in-person communications, beginning as early as June 30, 2019, prior to Crossroads entering into any leases with 19th Capital.

69. Defendant knew that these misrepresentations were false, because Defendant had a less than arm's length relationship with TruNorth and had a history of litigation regarding the quality of the warranties that it was offering.

70. Crossroads relied on these misrepresentations in deciding to lease the used trucks from Defendant rather than purchase new trucks.

71. Defendant made these statements knowingly and with the intent to deceive, because Defendant wanted Crossroads to lease its trucks.

72. Crossroads was deceived by Defendant because it never would have leased the trucks, and subsequently incur all the maintenance fees, had Crossroads known that Defendant's trucks were not in good working condition and the warranty would not cover engine issues.

73. As a direct and proximate result of Defendant's conduct Crossroads has been damaged in an amount exceeding $75,000 and is entitled to recover from Defendant compensatory and punitive damages in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT

74. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

75. Defendants executed the Second Warranty dated February 28, 2020, in which they agreed to provide coverage for the 9789 Freightliner.

76. The Second Warranty committed Defendants to providing coverage for up to 1,250,000 miles and for 36 months.

77. The Second Warranty's coverage included damage to the 9789 Freightliner's engine, transmission, differential, and other components.

78. Engine failure occurred within three months of Crossroads receipt of the 9789 Freightliner and after it had been driven only 7,873 miles, which was well within the agreement's 36 months/ 1,250,000 mile cap.

79. Although the engine failure fell under warranty agreement coverage, TruNorth denied Crossroads' claim.

80. Defendants breached the agreement by failing to satisfy Crossroads' claim and reimburse it for engine damage.

81. As a direct and proximate result of Defendants' breach of contract, Crossroads suffered and will continue to suffer damages exceeding $75,000, the exact amount to be determined at trial.

## FIFTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

82. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

83. Defendants supplied information to Crossroads by informing it that the trucks it leased from 19th Capital, including the 9789 Freightliner, were protected by a robust warranty to be arranged by Defendants that would cover any necessary engine repair or replacement.

84. Defendants intended for Crossroads to rely on that information – the thrust of their marketing pitch was that the trucks would be completely protected by the warranty.

85. Crossroads particularly relied on Defendants' representations about the scope and quality of the warranty because Defendants did not show Crossroads the actual warranty agreement until a month after the lease was executed.

86. Crossroads' reliance on Defendants' promise to provide comprehensive coverage for the 9789 Freightliner was reasonable, because Defendants marketed the lease on the premise that Defendants were honest, and their trucks would come with such coverage.

87. Defendants took extra measures to ensure Crossroads would rely on the information without reviewing the agreement when Defendants' representative signed the agreement "for" Crossroads, and then Defendants delayed until a month after the lease was executed to provide the warranty agreement to Crossroads.

88. Defendants failed to use reasonable care or competence in obtaining or communicating the information.

89. Crossroads relied on that information. It would not have leased any trucks from 19th Capital, including the 9789 Freightliner, if it had not been promised a full coverage warranty.

90. Crossroads was damaged when it tried to enforce the Second Warranty after the 9789 Freightliner failure and Defendants denied coverage.

91. The reliance caused financial damage to Crossroads exceeding $75,000, in an exact amount to be determined at trial.

### SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY/ CONSTRUCTIVE FRAUD

92. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

93. Defendants owed Crossroads a fiduciary duty.

94. A fiduciary relationship existed because Crossroads reposed confidence with Defendants resulting in Defendants' superiority and influence over Crossroads, and Defendants in equity and good conscience were bound to act in good faith and with due regard to the interests of Crossroads, who reposed the confidence.

95. Specifically, Defendants held all the cards and had domination and influence over Crossroads with respect to acquiring and providing Crossroads with a full- coverage, robust warranty for the 9789 Freightliner.

96. 19th Capital knew that Crossroads relied on it to acquire such a warranty because the existence of such a warranty in association with the lease was a significant part of its marketing pitch to Crossroads.

97. Defendants knew that Crossroads relied on its control and dominion over the warranty agreement execution when Defendants executed the agreement for both Crossroads and themselves, never requiring Crossroads' signature and not even providing Crossroads with the warranty agreement until a month after the lease was executed.

98. This breach of fiduciary duty was the proximate cause of the injury to Crossroads.

99. Defendants relied on this relation of trust and confidence to consummate the transaction in which Crossroads leased the 9789 Freightliner in reliance on a comprehensive warranty, having not been shown the warranty agreement arranged by 19th Capital and executed for Crossroads by Defendants.

100. Defendants took advantage of their position to harm Crossroads by leasing it a defective truck that promptly failed, then groundlessly denying the promised warranty coverage while still requesting lease payments, benefiting to Crossroads' detriment.

101. By virtue of the foregoing, Crossroads has suffered more than $75,000 in damages, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION – CIVIL CONSPIRACY

102. Crossroads repeats and realleges the preceding allegations as if fully set forth herein.

103. 19th Capital and TruNorth reached an agreement.

104. Specifically, Defendants conspired to commit the acts alleged above, including fraud, constructive fraud in violation of N.C. Gen. Stat. §75-1.1, when they agreed in Huntersville, North Carolina to induce Crossroads to lease the 9789 Freightliner in reliance that they would acquire and provide a robust, comprehensive, good-faith warranty covering engine failures. Then Defendants leased Crossroads a defective truck that almost immediately failed catastrophically in Charlotte, used a flimsy warranty agreement to pretextually deny coverage, continued to demand lease payments from Crossroads, and did not cover any repairs or associated damages or costs. Defendants orchestrated this through false statements to Crossroads about the warranty offering negotiations, and then by not showing Crossroads the warranty agreement until a month after the lease, and by having a TruNorth agent fraudulently sign the warranty agreement for Crossroads.

105. As a result of the foregoing, Defendants caused Crossroads to incur over $75,000 in damages, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Crossroads requests that:

a. Defendants be taxed with compensatory and punitive damages and other relief as provided by the statues cited herein.

b. Defendants pay Crossroads' attorney fees pursuant to N.C. Gen. Stat. §75-16.1 and other applicable law.

c. Defendants be ordered to pay treble damages pursuant to N.C. Gen. Stat. §75-16.

d. That Defendants pay the costs of this action.

e. Crossroads receive any other relief as the Court deems just and proper.

Respectfully submitted this 1st day of July, 2021.

/s/William R. Terpening
William R. Terpening
N.C. Bar 36418

**TERPENING LAW PLLC**
221 W. 11th Street
Charlotte, NC 28202
terpening@terpeninglaw.com
(980) 265-1700

*Counsel for Plaintiff*