# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
### CASE NO. 3:21-CV-00318-RJC-DSC

| | |
|---|---|
| **CROSSROADS TRUCKING CORP.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**19TH CAPITAL GROUP LLC AND TRUNORTH WARRANTY PLANS OF NORTH AMERICA LLC,**<br><br>**Defendants.** | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on "19th Capital Group LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint," Doc. 15, filed August 30, 2021.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted.

## I.  Procedural and Factual Background

This is an action for Breach of Contract, Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1., Negligence, Fraud, Negligent Misrepresentation, Breach of Fiduciary Duty/Constructive Fraud, and Civil Conspiracy. Plaintiff leased a freightliner truck from Defendant 19th Capital Group. The truck was covered under a warranty issued by Defendant

TruNorth.[1] After that truck suffered catastrophic engine failure, 19th Capital replaced it with a 9789 Freightliner. A Second Warranty was issued by TruNorth to cover the 9789 Freightliner. The 9789 Freightliner also suffered catastrophic engine failure and TruNorth denied the claim brought under the Second Warranty. Plaintiff seeks full reimbursement for all damages caused by Defendants' alleged breach of the Second Warranty. Plaintiff seeks compensatory and punitive damages, attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1, treble damages pursuant to N.C. Gen. Stat. § 75-16 and costs.

Accepting the factual allegations of the Complaint as true, 19th Capital solicited Plaintiff via email, phone calls, and marketing communications offering a truck leasing agreement. Doc. 1 at 2-3. 19th Capital promised to procure a comprehensive, robust warranty package that would cover any engine failure. Id. Prior to execution of the first lease, a 19th Capital representative also made oral representations about the "robust warranty program" that would cover "any and all problems." Doc. 1 at 16. 19th Capital further represented that it had a great warranty program that would "completely cover anything that went wrong with the trucks." Doc. 1 at 4, 14. Plaintiff only agreed to lease the first truck in reliance on 19th Capital's representations about the warranty. Doc. 1 at 14. The First and Second Warranties were provided by TruNorth with Plaintiff as the sole beneficiary. Both TruNorth and 19th Capital's logos were on the Warranty's heading. Doc. 1 at 4-5. Both Warranties were titled "19th Capital All-Inclusive Component Breakdown Warranty Agreement." Doc. 1 at 5.

The Second Warranty covering the substitute truck was substantially the same as the first. Doc. 1 at 6. On the Second Warranty, Plaintiff was listed as the "customer" and 19th Capital as

---

[1] On October 27, 2021, TruNorth's Motion to Enforce Dispute Resolution Provision of TruNorth Warranty Plans of America LLC was granted as to all claims brought against it. The remaining claims are against 19th Capital Group LLC.

"retailer." Id. The customer signature line contained in the Second Warranty was not signed by Plaintiff, but by a representative of 19th Capital. Id. The Second Warranty was not provided to Plaintiff prior to its execution. Doc. 1 at 5. Plaintiff had received the Warranty four months prior to the second engine failure. Doc. 1 at 7. Plaintiff made its best efforts to comply with the Second Warranty when seeking repairs. Id. TruNorth denied Plaintiff's claim, alleging the check engine lights had illuminated 100 miles prior to the engine failure. Doc. 1 at 8. Plaintiff was not advised that the Second Warranty included an elaborate "claim procedure," "breakdown responsibilities," or contained "strict required maintenance" procedures until one month after it was executed. Id.

The Complaint also alleges a history of 19th Capital and TruNorth violating the law, leasing defective trucks, and denying warranty coverage for bogus reasons. Doc. 1 at 9. Plaintiff claims this relationship between 19th Capital and TruNorth amounted to civil conspiracy. Doc 1. at 19. Plaintiff further alleges 19th Capital was negligent in failing to provide a comprehensive warranty as promised in the lease agreement. Doc. 1 at 13.

Plaintiff filed this action on July 1, 2021. 19th Capital moved to dismiss all claims against it on August 30, 2021, arguing Plaintiff failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) or to comply with heightened pleading standards required by Federal Rule of Civil Procedure Rule 9(b).

## II. Discussion

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see Priority Auto Grp., Inc. v. Ford Motor Co.,

757 F.3d 137, 139 (4th Cir. 2014). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (alleging that government officials adopted a challenged policy "because of" its adverse effects on the protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Id. at 678. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a

defendant's liability." Id.; see E. Shore Mkts. Inc. v. J.D. Assocs., LLP, 213 F.3d 175, 180 (4th Cir. 2000) (explaining that while the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke, 490 U.S. at 328; see Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

**B. 19th Capital is Not a Party to the Second Warranty**

Under North Carolina law, a warranty is interpreted applying principles of contract law. Allen v. Roberts Const. Co., 138 N.C. App. 557, 570-71, 532 S.E.2d 534, 542. "The word 'warranty' by definition implies a contractual relation between the party making a warranty and the beneficiary to the warranty." Murray v. Bensen Aircraft Corp., 259 N.C. 638, 641, 131 S.E.2d 367, 370 (1963). A breach of contract claim requires the plaintiff to allege the existence of a contract, specific provisions breached, the facts of the breach, and damages resulting from the breach. Sides v. Athene Annuity & Life Co., 2020 WL 2114380 at *3 (W.D.N.C. May 4, 2020). A contract cannot be formed unless two parties mutually assent "to the same thing in the same sense." Id. at 139 (quoting Yeager v. Dobbins, 252 N.C. 824, 828, 114 S.E.2d 820, 823-24 (1960). See also Horton v. Humble Oil & Refining Co., 225 N.C. 675, 679, 122 S.E.2d 716, 719 (1961) (holding a contract exists "where there has been a meeting of the minds as to all essential terms of the agreement").

In Howe v. Links Club Condo. Ass'n, Inc., the North Carolina Court of Appeals reversed the trial court's ruling that a termination agreement was a valid contract between condominium owners and the condominium association. 263 N.C. App. 130, 142, 823 S.E.2d 439, 449 (2018). The court found the termination agreement explicitly stated it was created and executed by "Links Raleigh" and not the association. Id. The Court rejected Plaintiff's assertion that the association had contractual and other obligations set forth in the agreement because it amounted to a conclusory statement "devoid of allegations that the Association was a party to, or otherwise bound by, the Termination Agreement." Id. at 142, 823 S.E.2d at 450.

In addition to North Carolina contract law, there is persuasive precedent that 19th Capital is not a party to the Second Warranty. In Murray v. General Motors, LLC., the Fifth Circuit upheld the district court's ruling that a car dealer was not liable for breach of warranty because there

was no agreement between the dealer and the plaintiff. Murray v. General Motors, LLC., 478 Fed. Appx. 175, 179, (5th Cir. 2012.) The Court held the dealer was not liable on the manufacturer's warranty even if they used the warranty as a sales tactic. *Id.*

Similar to Howe and Murray, 19th Capital did not have any contractual obligations under the warranty and cannot be liable for breach of a third party's warranty. Like the termination agreement in Howe, the warranty was written and executed by TruNorth, not 19th Capital. 19th Capital argues Plaintiff's assertion that 19th Capital's logo and name on the warranty is "compelling evidence" 19th Capital intended to be a party to the contract puts "form over substance." This Court agrees. Absent more, the Court is will not impose contractual obligations on 19th Capital.

Further, Plaintiff's reliance on a "meeting of the minds" as evidence 19th Capital intended to form a contract is contrary to the facts plead. Doc. 25 at 5. Plaintiff argues there was a meeting of the minds as to the terms of the agreement, that 19th Capital would lease a truck with a comprehensive warranty package. Id. But those were terms of a sales contract, not the Warranty. There is no evidence 19th Capital had a mutuality of obligation – an essential requirement to contract formation – under the Warranty. TruNorth was the sole warrantor with all rights and responsibilities under the Warranty. 19th Capital was only listed on the Warranty as the authorized retailer and lien holder. They were in no way responsible to Plaintiff for any of the obligations under the Warranty.

For those reasons, the undersigned respectfully recommends that the breach of contract claim be dismissed.

**C. Plaintiff's Fraud, Negligence, Negligent Misrepresentation, and Unfair and Deceptive Trade Practices Claims Fail as a Matter of Law**

Under North Carolina law, the elements for an action based upon fraud are: (1) material misrepresentation of existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) the misrepresentation was made with intention that it should be acted upon; (5) the recipient of the misrepresentation reasonably relied upon and acted upon it; and (6) damage resulted to the injured party. Ramsey v. Keever's Used Cars, 92 N.C. App. 187, 189-90, 374 S.E.2d 135,137 (1988) (quoting Rosenthal v. Perkins, 42 N.C. App. 449, 451-52, 257 S.E.2d 63, 65 (1979). "[T]he mere expression of an opinion or belief, or more precisely, a representation which is nothing more than the statement of an opinion, cannot constitute fraud." Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co., 258 N.C. 49, 52, 127 S.E.2d 759, 761 (1962). A fraudulent misrepresentation must "relate to facts and not opinions, sales talk, or promissory statements." Silicon Knights, Inc. v. Epic Games, Inc., 2011 WL 1134453, at *6 (E.D.N.C. Jan. 25, 2011) (citing Wilson v. Popp Yarn Corp., 680 F. Supp. 208, 215 (W.D.N.C. 1988)). An "opinion or promissory representation may support a fraud claim if, at the time the statement is made, the speaker actually believes to the contrary and makes the statement with an intent to deceive the other party." Id.

Promises of future performance do not support an action for fraud. Global Hookah Distributors, Inc. v. Avior, Inc., 401 F. Supp. 3d 653, 658 (W.D.N.C. 2019). In Global Hookah Distributors, this Court held statements made by the defendant that its services included "an experienced customer support team, a cheap cloud solution, and reduced IT and tax accounting costs" were unactionable puffery because the statements were "promising some outcome." Id. This Court reasoned the statements were not of an existing fact, but a promise for future performance amounting to "statements of corporate optimism" which "cannot form the basis of fraud or UDTPA claims." Id.

Plaintiff argues 19th Capital made multiple representations that wrongfully induced them into leasing a truck. Doc. 1 at 14. 19th Capital represented their "trucks were in good working condition" and would come with a comprehensive warranty. Id. Plaintiff did not plead facts sufficient to show 19th Capital knew their trucks were not in good working order at the time those statements were made. As for the Warranty, the promise of robust coverage that would "cover any and all issues" was not of an existing fact, but a promise of future performance. 19th Capital fulfilled their promise to procure a warranty. Because TruNorth was responsible for the warranty coverage, 19th Capital's promise of its comprehensiveness was sales puffery and not a predicate for fraud, negligence, fraudulent misrepresentation, or UDTP.

Even accepting the factual allegations as true and viewed in the light most favorable to Plaintiff, they fall short of pleading a fraud claim upon which relief can be granted. Plaintiff claims 19th Capital and TruNorth were closely related business partners who were the "subject of many customer complaints and criticisms" for providing deficient warranties. Doc. 1 at 11. Plaintiff further alleges 19th Capital has a history of litigation regarding the validity of their warranties. Doc. 1 at 14. Without pleading facts related to the "complaints and criticisms" and litigation, these allegations are conclusory statements and not entitled the assumption of truth.

For those reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to fraud, negligence, negligent misrepresentation, and UDTP be granted.

### D. There is No Fiduciary Relationship Between 19th Capital and Plaintiff

Plaintiff alleges a fiduciary relationship existed because 19th Capital exercised "superiority and influence" over Plaintiff and "held all the cards" with respect to acquiring the Warranty. Doc. 1 at 17-18. A fiduciary relationship arises when a heightened level of trust is placed in one "who in equity and good conscience is bound to act in good faith" and put the other party's

interests above their own. Dallaire v. Bank of America, N.A., 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014). North Carolina courts recognize two types of fiduciary relationships: "*de jure*, those imposed by operation of law, and *de facto*, those arising from the particular facts and circumstances surrounding the relationship. Hager v. Smithfield E. Health Holdings, LLC., 264 N.C. App. 350, 355, 826 S.E.2d 567, 571 (2019). The short list of relationships considered to be fiduciary by law includes, "relationships between spouses, attorney and client, trustee and beneficiary, members of a partnership, and physician and patient." King v. Bryant, 369 N.C. 451, 464, 795 S.E.2d 340, 349 (2017). Special circumstances can create a fiduciary relationship "when one party figuratively holds all the cards – all the financial power or technical information." Broussard v. Meineke Disc. Muffler Shop, Inc., 155 F.3d 331, 348 (4th Cir. 1998).

"Mutually interdependent businesses," "in equal bargaining positions and at arms' length," have not been found to be in fiduciary relationships under North Carolina law. Tin Originals, Inc. v. Colonia Tin Works, Inc., 98 N.C. App. 663, 391 S.E.2d 831, 833 (1990). In Tin Originals, the court declined to impose a fiduciary duty on a company who relied on a sole manufacturer for 80% of its sales because there was insufficient evidence of "domination and influence" by defendant. Id.

Here, Plaintiff and 19th Capital do not have a fiduciary relationship under North Carolina law. A retailer-customer relationship is not on the list of recognized fiduciary relationships. Plaintiff's contention that the relationship should be recognized as a fiduciary relationship based upon the special facts and circumstances falls short. Plaintiff and 19th Capital were mutually interdependent businesses bargaining at arms' length. Plaintiff's allegation that 19th Capital exercised domination and influence over the warranty program is insufficient evidence to show they held all the cards. The Complaint does not allege that Plaintiff demanded to see the

Warranty prior to execution or attempted to negotiate the Warranty in any way. Further, as a retailer, 19th Capital does not have a duty to put Plaintiff's interests above its own.

Since Plaintiff's relationship with 19th Capital does not meet the fiduciary relationship requirements under North Carolina law, the undersigned respectfully recommends that the breach of fiduciary duty claim be dismissed.

**E. Plaintiff Has Not Shown a Civil Conspiracy Existed Between 19th Capital and TruNorth**

A claim for civil conspiracy must allege facts that show: "(1) an agreement between two or more individuals; (2) to do any unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Nexus Techs. Inc. v. Unlimited Power, LTD., 2019 WL 4941178 *7 (W.D.N.C. Oct. 7, 2019) (citing State ex. Rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 443, 666 S.E.2d 107, 115 (2008)). To show proof of an agreement, a plaintiff must allege "wrongful overt acts," including how the conspiracy began or when, where, or why, it began. Id. at 690, 608 S.E.2d at 800. The "repeated use of the words combined, conspired, and agreed together to injure the plaintiff, are but conclusions of the pleader and without the allegation of the overt acts [a] complaint is insufficient to state a cause of action." Elliott v. Elliott, 200 N.C. App. 159, 266, 683 S.E.2d 405, 410 (2009).

Under North Carolina law, civil conspiracy is premised on an underlying act and is not a separate cause of action. Williams v. United Cmty. Bank, 218 N.C. App. 361, 371, 724 S.E.2d 543, 550-51 (2012). Since the underlying tort claims fail here, the civil conspiracy claim must also be dismissed.

### III. Recommendation

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "19th Capital Group LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint," Doc. 15, be **GRANTED.**

### IV. Notice of Appeal Rights

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845–46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED.**

Signed: January 25, 2022

*[Signature]*

David S. Cayer
United States Magistrate Judge