UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00318-RJC-DSC

CROSSROADS TRUCKING CORP.,     )
                                )
            Plaintiff,          )
                                )
    vs.                         )
                                )          **ORDER**
                                )
TRUNORTH WARRANTY PLANS         )
OF NORTH AMERICA, LLC and       )
19TH CAPITAL GROUP, LLC,        )
                                )
            Defendants.         )
_____ )

**THIS MATTER** comes before the Court on Defendant 19th Capital Group, LLC's Motion

to Dismiss for Failure to State a Claim and Failure to Comply With The Enhanced Pleading

Requirements (Doc. No. 15), the Magistrate Judge's Memorandum and Recommendation (the

"M&R") (Doc. No. 29), and Plaintiff's Objection to the M&R (Doc. No. 31).

I.    **BACKGROUND**

   A.    **Factual Background**

   Accepting the allegations in the Complaint as true, Plaintiff Crossroads Trucking Corp.

("Crossroads"), an equipment transportation company, primarily transports equipment for a

carnival company.  Crossroads leases trucks to accomplish its transportation goals, and did so from

Defendant, 19th Capital Group, LLC ("19th Capital"), a tractor-trailer leasing company. As part

of the transaction, Defendant TruNorth Warranty Plans of North America, LLC ("TruNorth")

provided a warranty to Plaintiff.  Plaintiff alleges that TruNorth and 19th Capital have a close

relationship and partnership in which they fraudulently induce customers to lease defective trucks

through a combination of misrepresentations about the quality of the trucks and the robust

coverage of the warranties.

After 19th Capital solicited Plaintiff via email, phone calls, and marketing communications, Plaintiff leased a freightliner truck (the "First Freightliner") from 19th Capital, and TruNorth provided the associated warranty (the "First Warranty"). 19th Capital represented to Plaintiff that the warranty was robust and would cover any and all engine failure. Plaintiff received the First Warranty about a month after leasing the First Freightliner. Subsequently, the First Freightliner engine failed. Pursuant to the First Warranty, TruNorth replaced it with a new Freightliner (the "Second Freightliner") as well as an almost identical lease and warranty. Again, Plaintiff received a copy of such warranty (the "Second Warranty") about a month after leasing the Second Freightliner.

Roughly three months after Plaintiff received a copy of the Second Warranty, the Second Freightliner suffered engine failure. Plaintiff followed the Second Warranty's requirements by obtaining a repair estimate and filing a claim with TruNorth. TruNorth denied coverage because the check engine light had illuminated within 100 hours before the engine failed. Despite Plaintiff's attempts to show that the engine light was unrelated to the engine failure, TruNorth denied the claim a second time.

### B. Procedural Background

Plaintiff filed this action bringing the following claims: (1) violation of the Unfair and Deceptive Trade Practices Act ("UDTPA"); (2) Negligence; (3) Fraud; (4) Breach of Contract; and (5) Negligent Misrepresentation. Subsequently, the Magistrate Judge granted TruNorth's request to enforce the dispute resolution provision contained in its warranty agreement with Plaintiff, and the matter is stayed pending arbitration as to Plaintiff's claims against TruNorth. Separately, 19th Capital filed its Motion to Dismiss, seeking dismissal of all claims against it under

Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## II.    LEGAL STANDARD

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations."  28 U.S.C. § 636(b)(1)(A) & (B).   The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).   However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).   De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."   *Id.*   Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6).   "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)."   *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)).   A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant

is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

The Magistrate Judge recommended granting 19th Capital's Motion to Dismiss all claims against 19th Capital. In response, Plaintiff raised six objections.

### A. Breach of Contract Claim

First, the M&R recommended dismissing Plaintiff's breach of contract claim because Defendant 19th Capital is not a party to the Second Warranty. Plaintiff objects, arguing 19th Capital is a party to the Second Warranty because its signature and logo are on the warranty agreement, and 19th Capital and TruNorth are close partners. The Court agrees with the Magistrate

4

Judge that 19th Capital is neither a party to the Second Warranty nor is it responsible to Plaintiff for any of the obligations under the warranty.

Under North Carolina law, a warranty is "contractual in nature." *Allen v. Roberts Const. Co.*, 138 N.C. App. 557, 570-71 (2000). "The word 'warranty' by definition implies a contractual relation between the party making a warranty and the beneficiary to the warranty." *Murray v. Bensen Aircraft Corp.*, 259 N.C. 638, 641 (1963). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 768 S.E.2d 582, 590 (N.C. Ct. App. 2015). Such an action requires "'the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach.'" *Sides v. Athene Annuity & Life Co.*, No. 3:19-cv-703-GCM, 2020 WL 2114380, at *3 (W.D.N.C. May 4, 2020). For a contract to be formed, there must be an offer and an acceptance in which two parties mutually assent "to the same thing in the same sense." *Yeager v. Dobbins*, 252 N.C. 824, 828 (1961). In other words, "a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184 (1995). "[A] non-party to a contract 'cannot be held liable for any breach that may have occurred.'" *Howe v. Links Club Condo. Ass'n, Inc.*, 263 N.C. App. 130, 139 (2018) (citing *Canady v. Mann*, 107 N.C. App. 8 252, 259 (1992)); *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 438 (1977) ("It is a fundamental principle of contract law that parties to a contract . . . may not bind a third person who is not a party to the contract in absence of his consent to be bound").

Here, the Second Warranty references 19th Capital only as the "retailer" and "lien holder," and 19th Capital's representative signed the Second Warranty as an "authorized retailer" of the TruNorth warranty. (Doc. No. 17-4). TruNorth, not 19th Capital, owes all obligations under the

Second Warranty. TruNorth appears thirty times on the Second Warranty, detailing its obligations and authority under the agreement. For example, the section titled "Claim Procedure and Breakdown Responsibilities," requires "[i]f breakdown occurs, please call TrüNorth™ Claims immediately" and sets forth both TruNorth's and Plaintiff's obligations for claims made under the warranty. In striking contrast, 19th Capital is absent from this and all other provisions of the agreement containing the terms of the Second Warranty. Moreover, any modifications to or transfer of the agreement must be approved by TruNorth, not 19th Capital. Additionally, Plaintiff sought coverage under both warranties with TruNorth not 19th Capital.

In *Howe v. Links Club Condo. Ass'n, Inc.*, the North Carolina Court of Appeals concluded that a condominium association did not have contractual obligations under a Termination Agreement between majority and minority owners, even though the association was mentioned throughout the agreement. 263 N.C. App. 130, 141 (2018). The court reasoned that the agreement explicitly stated it was created by "Links Raleigh," not the association, and there were otherwise no facts to establish that the Association assented to the agreement. *Id.* Plaintiff attempts to distinguish the present case from *Howe* by arguing that 19th Capital's logo and signature on the Second Warranty show its manifestation of assent. However, 19th Capital signed as an authorized retailer of the warranty, not as a party to the contract.

In *Murray v. General Motors*, the Fifth Circuit concluded that a car dealership is not liable for breach of a warranty provided by a manufacturer, even if the dealership's salesman uses said warranty to sell cars. 478 Fed. App'x 175, 179 (5th Cir. 2012) (per curiam). Like the car dealership in *Murray*, 19th Capital is not liable under the warranty solely because it uses the warranty as a sales tactic for leasing trucks. Plaintiff argues the present case is distinguishable from *Murray* because 19th Capital was acting as an agent for TruNorth. Even if true, *Murray*

6

specifically notes that agents are not liable for the warranties they sell. *Id.* at 179 (quoting *Wright v. Paul Moack Pontiac, Inc.*, 828 So.2d 201, 202 (Miss. Ct. App. 2001) ("[A] car salesman [who] used the manufacturer's warranty as a 'sales tactic' . . . was not acting 'in any capacity other than as an agent of [the manufacturer]' and, therefore, the dealership could not be held liable for breach of an express warranty."); *DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 753 (M.D.N.C. 2004) ("In North Carolina, a contract made by a known agent, acting within the scope of his authority for a disclosed principal is the contract of the principal alone, unless the agent has by special agreement assumed personal liability for the obligations of the principal.").

Finally, Plaintiff's assertion that 19th Capital is a party to the warranty because it and TruNorth are "close partners and conspirators," is conclusory and unpersuasive. Plaintiff fails to cite to any law that supports this argument.[1] For these reasons, the Court finds that 19th Capital is not a party to the Second Warranty, and Plaintiff's breach of contract claim is dismissed.

### B. Fraud, Unfair and Deceptive Trade Practices, Negligent Misrepresentation, and Negligence Claims

Next, the Magistrate Judge concluded that Plaintiff's tort claims fail as a matter of law and should be dismissed because they are based on puffery and/or conclusory statements. Plaintiff argues 19th Capital's statements are not puffery and the M&R incorrectly analyzed the tort claims together. Analyzing each tort separately, the Court agrees the claims should be dismissed.

#### 1. Fraud

---

[1] The cases Plaintiff did cite are inapposite as they relate merely to conspiracies to violate federal statutes. *See Att'y Gen. of Maryland v. Dickson*, 717 F. Supp. 1090, 1095 (D. Md. 1989) (holding defendants "liable for conspiring to violate the federal odometer Act" when they worked together to sell used vehicles with rolled-back odometers); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253 (1940) (concluding that defendants conspired together to raise tank car gasoline prices in violation of the Sherman Anti-Trust Act.).

7

To assert a fraud claim in North Carolina, plaintiff must allege "(1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that there resulted in damage to the injured party." *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 189-90 (1988) (quoting *Rosenthal v. Perkins*, 42 N.C. App. 449, 451-52 (1979)). "[A] representation which is nothing more than the statement of an opinion[] cannot constitute fraud." *Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co.,* 258 N.C. 49, 52 (1962). Additionally, "puffery cannot form the basis of fraud or UDTPA claims." *Glob. Hookah Distribs., Inc. v. Avior, Inc.* 401 F. Supp. 3d 653, 660 (W.D.N.C. 2019) (Mullen, J.). "Puffery is language that includes 'exaggerated advertising, blustering, and boasting,' or 'vague' and 'general claim[s] of superiority.'" *Id.* at 659 (quoting *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 302 (4th Cir. 2017)). Further, promises of future performance do not support a fraud action. *Id.* at 658; *see also Union Bank of Bavaria v. Belk*, 510 F. Supp. 1117, 1119 (W.D.N.C. 1981) (concluding that a promise to lend money was an unactionable future promise). "[W]hile courts may determine on a motion to dismiss that a given statement constitutes puffery, it should only do so if 'no relief could be granted under any set of facts." *Ollila v. Babcock & Wilson Enters.*, No. 3:17-CV-109, 2018 WL 792069, at 5 (W.D.N.C. Feb. 8, 2018) (quoting *Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F. Supp. 2d 431, 436 (M.D.N.C. 2002)).

For example, in *Global Hookah*, the court held that general statements promising some specific outcome, such as to "provide everything [Plaintiff] would need," are "puffery" and cannot be the basis for a fraud. *Glob. Hookah Distribs.*, 401 F. Supp. 3d at 659 ("[F]raud cannot be based

on Defendant's poor calculation of its capabilities."); *see Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404 (E.D.N.C. 2015) (holding representations that defendant's craftsman had a "high level of knowledge and ability" as puffery). The court reasoned that Defendant's statements did not provide a disprovable fact or a specific "guarantee[] that its system will eliminate any need for clients to maintain their own systems or that it eliminates any and all possible errors." *Id.* at 660. While corporate optimism or vague statements about capabilities are likely puffery, guarantees or statements providing a measurable scope, such as "any and all," do not constitute puffery. *Id.*

Here, Plaintiff alleges 19th Capital made three false statements that induced Plaintiff to lease a truck: (1) "that its trucks were in good working condition," (2) "that the trucks would come with a warranty that would cover any and all issues with the engine," and (3) "that the warranty would cover any and all problems with the trucks." (Doc. No. 1 ¶ 67). 19th Capital's first statement constitutes puffery because it is a vague, general, and unmeasurable opinion on the quality of its trucks. However, at the motion to dismiss stage, the Court does not find that the second and third statements are non-actionable puffery because they provide specifics as to the scope of coverage under the warranty. They do not "merely gesture to some undefined future success or end goal," but instead guarantee coverage of "any and all problems" with the engine or truck. *Glob. Hookah Distribs.*, 401 F. Supp. 3d at 660.

Nevertheless, Plaintiff's fraud claim must be dismissed because it fails to properly allege 19th Capital knew its statements were false. Plaintiff alleges 19th Capital knew of the falsity of its statements because it has a close relationship with TruNorth, which has a history of litigation regarding its warranties. (Doc. No. 1 ¶ 69). As previously discussed, Plaintiff's allegations about the close relationship between 19th Capital and TruNorth are conclusory and unpersuasive. Similarly, Plaintiff's Complaint provides only conclusory allegations of "claims and criticisms"

and a "history of litigation" regarding TruNorth's warranties. Plaintiff cities to specific cases in its Objection; however, these cases were filed after 19th Capital made the allegedly false statements at issue here.[2] While Plaintiff argues 19th Capital is now aware of each of these cases, such awareness post-dates the alleged false statements. Without more, the filing of a complaint alone does not demonstrate that 19th Capital knowingly made false statements. Without facts to show 19th Capital knew of the statements' falsity or was culpably ignorant of their truth, Plaintiff fails to state a claim for fraud.

Finally, Plaintiff fails to sufficiently allege it reasonably relied on 19th Capital's statements. Plaintiff did not make a reasonable effort to determine if the statements were true. "In pleading fraud or negligent misrepresentation, when the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 484-85 (W.D.N.C. 2009). "Thus, a claim for either fraud or fraudulent concealment is not cognizable where the pleader fails to make an independent investigation." *Id.* at 485. According to the Complaint, the warranty was "the most material inducement" for Plaintiff to enter into its lease transaction with 19th Capital. Yet the Complaint does not allege that Plaintiff requested to see the warranty, asked about its specific terms, or was denied these opportunities. (Doc. No. 1 ¶¶ 17-18). Plaintiff chose to accept 19th Capital's representations as true without asking to review the warranty. Therefore,

---

[2] The alleged misrepresentations by 19th Capital began on or around June 30, 2019. (Doc. No. 1 ¶ 6). Such misrepresentations ended when the First Freightliner was leased on or around July 15, 2019. (*Id.* ¶ 13). The cases cited by Plaintiff all were filed after the First Freightliner was leased. See *A & D Devoted Logistics, LLC v. TruNorth Warranty Plans of N. Am., LLC*, No. 2:20-cv-02046-TLP-atc, 2021 WL 4901558 (W.D. Tenn. Oct. 20, 2021); see also *Swift Enterprises, LLC v. TruNorth Warranty Plans of N. Am., LLC*, No. 1:21-CV-146, 2022 WL 989397 (E.D. Tenn. Jan. 25, 2022).

Plaintiff is bound by the terms "it neglected to discover," and its fraud claim fails. *Carpet Super Mart, Inc. v. Benchmark Int'l Co. Sales Specialist, LLC*, 789 Fed. App'x 379, 381 (2020) ("By choosing to accept Benchmark's representations without asking to review the standard conditions, CSM was bound by the terms it neglected to discover. Consequently, any cause of action for fraud necessarily failed."). Additionally, Plaintiff received a copy of the First Warranty prior to entering the Second Warranty, which was "materially the same" as the First Warranty. Plaintiff had the opportunity to review the material terms of the First Warranty before entering into the Second Warranty. (Doc. No. 1 ¶¶ 27, 29, 31). Moreover, Plaintiff argues 19th Capital could easily have found examples of TruNorth's litigation history through Westlaw, Lexis, or Google. While, as noted, the cases Plaintiff cites for this argument are dated after the misrepresentations were made, if 19th Capital could have found such cases, so too could Plaintiff. For these reasons, Plaintiff's fraud claim is dismissed.

### 2. Unfair and Deceptive Trade Practices

In North Carolina, to state a claim for violation of the UDTPA, "a plaintiff must show: (i) that the defendant engaged in an unfair or deceptive act or practice; (ii) the act or practice was in or affecting commerce; and (iii) the act proximately caused injury to the plaintiff." *Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 685 (W.D.N.C. 2015). "A trade practice is 'unfair' if it is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" *Metro. Grp., Inc. v. Meridian Indus., Inc.*, No. 3:09-CV-440, 2010 WL 5056771 at *6 (W.D.N.C. Dec. 6, 2010) (quoting *Marshall v. Miller,* 302 N.C. 539, 548 (1981)). "[C]ourts identify a trade practice as 'deceptive' if it 'possesses the tendency or capacity to mislead, or creates that likelihood of deception.'" *Id.* (quoting *Forsyth Memorial Hospital v. Contreras,* 107 N.C. App. 611, 614 (1992)). "[P]uffery cannot form the basis of fraud or UDTPA claims." *Glob.*

11

*Hookah Distribs.*, 401 F. Supp. 3d at 660. Further, "[w]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) (quoting *Sunset Beach Dev., LLC v. AMEC, Inc.*, 675 S.E.2d 46, 54 (N.C. App. 2009)). Whether a commercial act or practice is unfair or deceptive is a question of law. *Norman Owen Trucking, Inc. v. Morkoski*, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998). "Moreover, whether an action is unfair or deceptive is dependent upon the facts of each case and its impact on the marketplace." *Id.* (internal quotation marks omitted).

First, Plaintiff partially bases its UDTPA claim on allegations that 19th Capital "induced [Plaintiff] to lease substandard trucks by promising that they would be fully protected by a robust warranty that would facilitate prompt, straightforward, and full repair or replacement if there were any problems with a leased truck." (Doc. No. 1 ¶ 53). 19th Capital's statements regarding the warranty's "robust" and "prompt, straightforward" coverage are unactionable puffery because they are general statements of optimism that do not guarantee any measurable outcome. However, at the motion to dismiss stage, 19th Capital's statement that the warranty would provide "full repair or replacement if there were any problems" leans away from puffery because it is not general or vague but reflects the scope of coverage under the warranty. Even if 19th Capital's statements are not puffery, Plaintiff fails to allege facts showing 19th Capital was deceptive regarding the coverage under the warranty. Plaintiff's argument that 19th Capital colluded with TruNorth such that it assumes TruNorth's actions and intentions is conclusory and unpersuasive. Additionally, Plaintiff did not allege that it made a reasonable effort to review the warranty to determine if 19th Capital's statements were true. *See Carpet Super Mart, Inc.*, 789 Fed. App'x at 381 (dismissing

unfair and deceptive trade practices act claim where any alleged misrepresentations about the terms of an agreement conflicted with the terms of the agreement which the plaintiff "neglected to discover"); *see also Suntrust Mortg., Inc.*, 651 F. Supp. 2d at 486 (dismissing a UDTPA counterclaim under rule 12(b)(6) because it is unreasonable to rely on oral statements made by the other party without reading loan documents prior to the agreement).

Next, Plaintiff alleges that 19th Capital was deceptive for failing to provide Plaintiff a copy of the Second Warranty until a month after it was executed. However, such action was not deceptive where Plaintiff knew its receipt of the First Warranty was delayed, but failed to request review of the Second Warranty at or before its execution. As discussed above, if Plaintiff believed the terms of the warranty were the "most material inducement" for entering into the lease transaction, it was unreasonable to enter into the transaction without reviewing or inquiring into the specific terms of the warranty.

Finally, to the extent Plaintiff's UDTPA claim is based on the allegation that TruNorth did not provide coverage under the Second Warranty, the claim fails because it is in essence a breach of contract claim. "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA." *Nike USA Inc. v. WDP Soccer Inc.*, No. 3:18-CV-374-RJC-DSC, 2018 WL 4289653, at *4 (W.D.N.C. Aug. 10, 2018). Instead, in the context of a contractual relationship, a party must allege "torts based on an independent duty that is 'identifiable' and 'distinct' from the breach of contract claim." *Wheeler v. BMW of N. Am. LLC*, 534 F. Supp. 3d 527, 534 (W.D.N.C. 2021) (citing *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 166 (4th Cir. 2018)). A tort is considered distinct from a breach of contract claim when "plaintiff successfully alleges tort claims related to the inducement of the contract rather than claims arising out of the contract itself." *Id.* (holding that fraudulent concealment and

13

UDTPA claims "survive at the motion to dismiss stage to the extent that they allege breach of duty prior to and leading to the inducement of the purchase and warranty"). To the extent that Plaintiff's UDTPA claim is based on 19th Capital or TruNorth's failure to perform under the Second Warranty, it sounds only in breach of contract and is dismissed. For these reasons, Plaintiff's claim for violation of the Unfair and Deceptive Trade Practices Act fails and is dismissed.

### 3. Negligent Misrepresentation

"To prevail on a claim for negligent misrepresentation, a party must show (1) that he justifiably relied, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*, No. 5:07CV140, 2010 WL 2294323 at *6 (W.D.N.C. June 4, 2010) (citing *Jordan v. Earthgrains Cos., Inc.*, 576 S.E.2d 336, 339 (N.C. Ct. App. 2003)). "[A] claim for negligent misrepresentation does not require the intent to deceive but may rest on the failure to use." *Silicon Knights, Inc. v. Epic Games, Inc*., No. 5:07-CV-275-D, 2011 WL 1134453 at *13 (E.D.N.C. Jan. 25, 2011). For the reasons discussed above, Plaintiff fails to allege that it justifiably relied on 19th Capital's statements about the First Warranty. *See Carpet Super Mart, Inc.* 789 Fed. App'x at 381 (2020). Accordingly, Plaintiff's claim for negligent misrepresentation is dismissed.

### 4. Negligence

To establish a claim for negligence, Plaintiff must allege facts showing: (1) [Defendant] owed Plaintiff a duty of reasonable care, (2) [Defendant] breached that duty, (3) [Defendant's] breach was an actual and proximate cause of Plaintiff's injury, and (4) Plaintiff suffered damages as the result of [Defendant's] breach. *Stricklin v. Stefani*, 358 F. Supp. 3d 516, 525 (W.D.N.C. 2018). As mentioned above, this Court has previously held that "'[a] tort action does not lie against

14

a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party.'" *Wheeler*, 534 F. Supp. 3d 532-33 (quoting *Rountree v. Chowan Cty.,* 252 N.C. App. 155 (2017)); *see also Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42 (2003) ("We acknowledge no negligence claim where all rights and remedies have been set forth in the contractual relationship."). Here, Plaintiff alleges 19th Capital owed a duty to provide the warranty it promised, regardless of the terms of the written agreement. Plaintiff's argument fails because 19th Capital is not a party to the Second Warranty, and it has no duty to provide coverage. 19th Capital had a duty to provide a warranty, which it did, and any obligations under the warranty remain with TruNorth. Therefore, Plaintiff's negligence claim is dismissed.

### C.    Fiduciary Relationship Between 19th Capital and Plaintiff

Plaintiff argues the M&R prematurely concluded that a fiduciary duty does not exist, and it is for the jury to determine whether such a relationship exists. The Court agrees with the Magistrate Judge, and the breach of a fiduciary duty claim is dismissed.

To state a claim for breach of a fiduciary duty, "it is fundamental that a fiduciary relationship must exist between the parties." *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 251 (2002). "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings*, LLC., 264 N.C. App. 350, 355. Courts have held certain relationships "to be inherently fiduciary, including the relationships between spouses*,* attorney and client, trustee and beneficiary, members of a partnership, . . . and physician and patient." *King v. Bryant*, 369 N.C. 451, 464 (2017); *see also CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 52 (2016) ("The

list of relationships that we have held to be fiduciary in their very nature is a limited one, . . . and we do not add to it lightly.").

Outside of those relationships recognized by law, North Carolina has found fiduciary relationships to exist "when one party figuratively holds all the cards—all the financial power or technical information, for example." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998); *see also S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002) (to determine that a fiduciary relationship exists, there must be "confidence reposed on one side, and resulting domination and influence on the other") (quoting *Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931)).  North Carolina courts have also determined "when a fiduciary relationship does not extend to certain relationships as a matter of law." *Mikels v. Unique Tool & Manufacturing Co. Inc.*, 2007 WL 4284727 at *12 (W.D.N.C. 2007).  For example, "North Carolina courts have held that a fiduciary relationship does not exist between two "mutually interdependent businesses." *Id.* (quoting *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666 (1990)); *see also Id.* ("Our review of reported North Carolina cases has failed to reveal any case where mutually interdependent businesses . . . were found to be in a fiduciary relationship with one another.").  "[E]ven when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other." *S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002).

Plaintiff and 19th Capital's relationship is not a fiduciary relationship as a matter of law. Plaintiff fails to allege facts to support its conclusory statements that 19th Capital "holds all the cards" or has complete "domination and influence" over Plaintiff to form a fiduciary relationship. Rather, Plaintiff and 19th Capital were two mutually interdependent businesses bargaining at arm's length.  Further, Plaintiff's argument that the existence of a fiduciary relationship is a question of

fact for a jury is unpersuasive. Courts regularly dismiss claims that do not sufficiently allege a fiduciary relationship. *See, e.g., Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 505 F. Supp. 3d 570, 591 (M.D.N.C. 2020) (dismissing fiduciary duty claim under Rule 12(b)(6) between two "sophisticated businesses that negotiated some type of an arrangement—allegedly a contractual one—at arms-length, and no special circumstances have been shown"); *see also CommScope Credit Union v. Butler & Burke*, LLP, 369 N.C. 48, 56 (2016) (affirming district court's dismissal of a fiduciary duty claim under Rule 12(b)(6) where "plaintiff's allegations, treated as true, [did] not establish that defendant owed it a fiduciary duty in fact."). Accordingly, Plaintiff's breach of fiduciary duty claim is dismissed.

### D. Civil Conspiracy Claims

To state a claim for civil conspiracy, Plaintiff must allege facts showing "(1) an agreement between two or more individuals; (2) to do any unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Nexus Techs., Inc. v. Unlimited Power Ltd.*, No. 1:19-CV-00009-MR, 2019 WL 4941178 (W.D.N.C. Oct. 7, 2019) (citing *State ex. Rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 443 (2008)). Plaintiff's "recovery must be on the basis of sufficiently alleged wrongful overt acts." *Dove v. Harvey*, 168 N.C. App. 687, 690 (2005) (quoting *Fox v. Wilson*, 85 N.C. App. 292, 301 (1987) (citation omitted)). A civil conspiracy claim fails when the underlying tort claims are dismissed. *Williams v. United Cmty. Bank*, 218 N.C. App. 361, 371 (2012). Here, because all of Plaintiff's underlying tort claims fail, its civil conspiracy claim is dismissed.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's Memorandum and Recommendation (Doc. No. 29) is **ADOPTED**; and

2. Defendant 19th Capital's Motion to Dismiss for Failure to State a Claim (Doc. No. 15) is **GRANTED**.


Signed: August 31, 2022


Robert J. Conrad, Jr.
United States District Judge